```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                         :
SITI-SITES.COM, INC.,                    :
                    Plaintiff,           :
                                         :      10 Civ. 3751 (DLC)
         -v-                             :
                                         :      OPINION & ORDER
VERIZON COMMUNICATIONS, INC. et al.,     :
                    Defendants.          :
                                         :
----------------------------------------X
```

Appearances:

For Plaintiff:
Lawrence M. Powers
47 Beech Road
Englewood, NJ 07631

Gary G. Cooper
Cooper & McCann LLP
197 Coligni Avenue
New Rochelle, NY 10801

For Defendants:
Reid M. Figel
Michael K. Kellogg
Aaron M. Panner
Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, DC 20036

W. Stephen Smith
Michael B. Miller
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104

Henry B. Gutman
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017

DENISE COTE, District Judge:

   The plaintiff Siti-Sites.com, Inc. ("Siti") has brought this

1

antitrust action against Allied Security Trust ("AST") and several large telecommunications companies on the theory that AST and its co-conspirators are preventing small non-producing entities ("NPEs") who own patents in the telecommunications industry from licensing or selling their patents at fair market value.  Because Siti has no standing to assert its claims, the defendants' motion to dismiss is granted.

## Background

The amended complaint ("Complaint") asserts three antitrust causes of action:  collusion to achieve devaluation of patents, concerted refusals to deal, and deceptive price-fixing.  It principally asserts that the defendants are attempting to prevent NPEs like the plaintiff from licensing or selling patents for third and fourth generation wireless products at fair market value.  The aim of the defendants, as described in the Complaint, is to obtain control of the intellectual property in the wireless industry with a minimal investment of capital.

Siti is a Delaware corporation in voluntary dissolution, with offices in New York.  It was actively engaged in the mobile device licensing business from 1989 to 1999, but is currently liquidating its business interests.[1]

---

[1] While Siti asserts that it still owns an interest in a "body of patents and patent values," it also explains that this assertion is in fact a reference to its right to receive gross proceeds

2

Siti has named MLR LLC ("MLR") as a real party in interest and involuntary plaintiff in its lawsuit. MLR is a Virginia LLC with its principal place of business in Virginia.[2] MLR was organized in 1999 by former key Siti employees for the purpose of buying the Siti patents, pending patent applications, issued licenses and client lists. MLR purchased the assets for $27,000. When Siti learned in 2003 that MLR was earning millions of dollars in license revenues, it sued MLR for conversion and breach of fiduciary duty. On February 21, 2006, MLR settled the litigation with a payment of a substantial amount of cash to Siti[3] and an agreement to pay up to 40% of its gross proceeds to Siti for a period of years ("Settlement Agreement"). The Settlement Agreement requires MLR to give Siti prior notice of any patent sale or of a change of control in MLR and guarantees to Siti "reasonable" protection of its right to receive its percentage of the gross proceeds of the MLR business. The Settlement Agreement further imposes on MLR sole responsibility to pay all expenses and costs. Based on its right to receive a

---

from MLR pursuant to its 2006 settlement agreement with MLR described below. Thus, it clarifies that its "interest in the patents" at issue in this litigation "is embodied in [the] settlement agreement."

[2] The Complaint does not identify the residence of the members of the MLR LLC.

[3] In its memorandum, Siti identifies the payment as $5.15 million.

share of the gross revenue generated by MLR, Siti describes its relationship with MLR as a "joint licensing business."

Siti promptly filed a UCC Financing Statement to protect its right to MLR's gross proceeds ("Financing Statement"). Beginning on March 10, 2006, Siti filed a series of Financing Statements that identified MLR as its debtor and itself as a senior creditor with a right to receive a defined percentage of MLR's future gross proceeds that are related to MLR's licensing or sale of patents.[4] The Annex to the Financing Statement lists the MLR patents at issue and explains that Siti "does not claim any ownership rights in the patents or patent applications listed or referred to" in the Annex and that it "has permanently relinquished any claim of ownership or title therein."

Siti provided the U.S. Patent and Trademark Office ("PTO") with a similar disclaimer of ownership. On May 20, 2006, Siti filed a notice of assignment with the PTO which acknowledged that it had previously raised allegations concerning its sale of a portfolio of patents owned by MLR ("Assignment"). After advising the PTO that the parties had resolved all issues related to MLR's

---

[4] The Complaint asserts that the Settlement Agreement "supports an inference that SITI has neither a creditor, lender, financier, nor investor relationship with MLR." On the other hand, the Complaint also pleads that the Settlement Agreement made Siti a creditor of MLR to the extent that MLR earns gross revenues. That latter pleading is consistent with Siti's declarations in its Financing Statement.

acquisition and ownership of the patents, Siti advised the PTO that it "wishes to state clearly and unequivocally that it has no ownership rights in or to any portion of the MLR portfolio of patents" and had agreed with MLR that MLR was "the complete, rightful and lawful owner of all rights, title and interest in the MLR Patents."  To "remove" any doubt that Siti had any ownership interest in the MLR patents, Siti "formally assigns to MLR any interest it may have had in the MLR Patents to the extent not already owned by MLR," including "the right to bring suit for and to collect damages for any past infringement of the MLR Patents and for any other cause of action arising from Siti-Sites' alleged ownership of the Patents including any violation by others of any federal or state tort or <u>antitrust</u> or unfair competition laws."  (Emphasis supplied.)

 Although Siti concedes in the Complaint that it is not an owner of or limited partner or investor in MLR and is neither a licensor nor licensee of MLR patents, it asserts in that pleading that it has independent standing to sue for Clayton Act violations that affect MLR because it is "a permanent assignee of a 'property' or 'business interest' impaired" by those antitrust violations.  According to Siti, the antitrust violations it identifies in the Complaint have resulted in an 84% decrease in "licensing frequency, and its cash flow," when measured from March 2007 to March 2010.  It adds that both Siti and MLR have

each had to spend millions in "separate costs and legal fees" to generate proceeds under the Settlement Agreement.

Siti has sued four entities and two individuals.  In addition to AST, the entities are Verizon Communications, Inc. ("Verizon"), Cisco Systems, Inc. ("Cisco"), and Ericsson Inc. ("Ericsson").  Verizon is the parent of Verizon Wireless, the largest wireless network in the United States, and is alleged to control AST.  Cisco operates wireless networks, develops wireless software, and needs wireless patent licenses for its business.  Ericsson is a global handset and infrastructure manufacturer and is a global services and operations advisor to wireless telecom networks.  Cisco and Ericsson are among the eighteen members of AST.  The individual defendants Daniel P. McMurdy and Brian Hinman are the current and former chief executive officers of AST, respectively.

Siti defines the relevant product market for the antitrust violations as the "worldwide Market for licenses or sales of mobile wireless-related patents owned by those who only license them, and do not use them in their business."  The relevant geographic market is the United States.  The Complaint explains that within this market, the defendants compete with Siti-MLR, and are also potential purchasers of MLR patents and licenses and

potential sellers of patent licenses to MLR.[5]

Siti filed its original complaint on May 6, 2010. The original complaint similarly asserted claims of concerted refusals to deal and collusion to create devaluation of patents, but it asserted a claim for bundling instead of the claim for deceptive price-fixing. Defendants filed their motion to dismiss the original complaint on August 12. That original motion to dismiss also contended that Siti lacked standing to pursue its claims and that Siti had failed to allege an antitrust violation. Siti then filed an amended complaint on September 3; accordingly, the Court denied defendants' motion to dismiss without prejudice to renewal on September 9. Defendants filed their motion to dismiss the amended complaint on September 30. Attached to the motion to dismiss were several exhibits, including the Financing Statements and Assignment.[6]

---

[5] While the Complaint repeatedly lists the owner of the patents at issue as "SITI-MLR", when read with care it is clear that MLR is the patent owner and Siti's rights are derived from its right to receive a share of MLR's gross proceeds.

[6] In a November 26 letter, Siti requested an opportunity to submit a sur-reply because the defendants' reply memorandum contained footnotes which permitted them to evade the spirit of the requirement that briefs be double spaced. Siti explained that it did not have any new issue to raise that had not been briefed by the parties but simply wanted a further opportunity to address the defendants' arguments. Siti having failed to identify any issue in the defendant's reply brief which, in fairness, required that Siti be given an opportunity to respond, the request to file a sur-reply is denied.

## Discussion

The defendants have moved to dismiss on two grounds. First, they contend that Siti lacks standing to bring a claim under Section 4 of the Clayton Act, 15 U.S.C. § 15, because it has only identified an indirect injury from the defendants' alleged violations of the antitrust laws, that is, a loss of revenue due to a decline in MLR's business. Second, they argue that Siti has failed to allege any antitrust violation because, inter alia, an agreement to purchase, license and resell patents is not unlawful per se, the Complaint fails to allege that such an agreement has resulted in an actual adverse effect on competition in the relevant market, and the Complaint is too conclusory in its allegations of an illegal agreement among the defendants.

On a motion to dismiss the court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted). The court is "not bound to accept as true legal conclusions couched as factual allegations. Only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950-51 (2009)).[7]

---

[7] Siti agrees that the Financing Statement and Assignment, which the defendants submitted in support of their motion, are properly considered on this motion to dismiss. See Cortec Indus., Inc. v.

Siti does not have standing to sue the defendants for their alleged violations of the antitrust laws.  As a result, it is unnecessary to address the defendants' additional grounds for dismissal of this lawsuit.

Section 4 of the Clayton Act creates a right to private enforcement of the antitrust laws.  It provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States . . ., and shall recover threefold the damages by him sustained . . . ."  15 U.S.C. § 15(a).

A private plaintiff seeking relief under the antitrust laws, whether it be in the form of damages or injunctive relief, "must show more than simply an 'injury causally linked' to a particular" violation; it must prove "'antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful.'"  Cargill, Inc., v. Monfort of Colo., Inc., 479 U.S. 104, 109 (1986) (citation omitted).  "'The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation because [t]he

---

Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991) (holding that a district court may consider public filings with the Securities and Exchange Commission proffered by the defendant when deciding a motion to dismiss).

antitrust laws were enacted for the protection of competition, not competitors.'" Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc., 467 F.3d 283, 290 (2d Cir. 2006) (citation omitted). When the antitrust suit seeks damages, courts must examine as well the "potential for duplicative recovery, the complexity of apportioning damages, and the existence of other parties that have been more directly harmed, to determine whether a party is a proper plaintiff." Cargill, 479 U.S. at 111 n.6. Thus, in addition to proving antitrust injury, the plaintiff must also demonstrate that he is a proper plaintiff in light of the Second Circuit's four "efficient enforcer" factors:

> (1) the directness or indirectness of the asserted injury; (2) the existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement; (3) the speculativeness of the alleged injury; and (4) the difficulty of identifying damages and apportioning them among direct and indirect victims so as to avoid duplicative recoveries.

In re DDAVP Direct Purchaser Antitrust Litig., 585 F.3d 677, 688 (2d Cir. 2009) (citation omitted).

Applying these principles, the Court of Appeals for the Second Circuit has held that a party whose economic injury is "derivative" of the injury suffered by a party directly affected by the antitrust violation has not sustained an antitrust injury and lacks standing to bring a lawsuit premised on antitrust violations. G.K.A. Beverage Corp. v. Honickman, 55 F.3d 762, 767

(2d Cir. 1995). Thus, "a party in a business relationship with an entity that failed as a result of an antitrust violation has not suffered the antitrust injury necessary for antitrust standing." Id. at 766. Similarly, "'derivative injuries sustained by employees, officers, stockholders, and creditors of an injured company do not constitute 'antitrust injury' sufficient to confer antitrust standing.'" Id. (citation omitted) (emphasis supplied).

The direct victim of the alleged antitrust violations outlined in the Complaint is MLR. The Complaint describes a scheme in which MLR's ability to maximize its revenues from the sale and licensing of its patents has been undermined by the defendants' anticompetitive conduct. Because Siti does not own the patents at issue, however, its injury is derivative of any injury sustained by MLR. Siti has only a contractual right to receive a percentage of MLR's gross proceeds, and thus has an interest as a creditor in the success of MLR's business. This economic interest is too indirect to constitute an antitrust injury and to confer standing upon Siti.

Siti appears to make three arguments in support of its standing to bring antitrust claims. The first two arguments are essentially premised on a theory that Siti is an owner of the MLR patents; the last asserts that Siti and MLR are engaged in a joint venture.

11

First, Siti argues that it remains an "equitable owner" of the MLR patents.  It explains that its 1999 sale of its patents to MLR was not a "legally consummated sale" because of the breach of fiduciary duty by Siti employees, whose deception was intended to deprive Siti of the substantial latent value in Siti's patents.  Siti adds that in 2006 it was required to transfer its rights to the patents in order to settle its litigation with MLR so that MLR's ownership interest in the patents could not be challenged by any infringer against whom MLR might bring suit.  The Complaint does not allege facts that support any argument that Siti remains an equitable owner of the MLR patents.  At most, it supports a claim that Siti retained an ownership interest in the MLR patents until Siti and MLR executed the Settlement Agreement.  After that date in early 2006, Siti relinquished all claim to any ownership interest in the patents, as the Complaint, the Financing Statement and the Assignment each confirm.  Accordingly, Siti's equitable ownership argument does not create a basis to find that Siti has standing to sue for the antitrust violations alleged in the Complaint, each of which allegedly impaired the value of the MLR patents during the period following the execution of the Settlement Agreement.

Second, Siti asserts the Settlement Agreement did not "release" its right to file antitrust claims against the defendants since the Settlement Agreement released its claim of

12

ownership of the patents for the period preceding 2006, and the antitrust violations did not occur until after the Settlement Agreement was executed.  In this argument Siti conflates the impact of the Settlement Agreement on its right to sue MLR with its right to sue the defendants for their violation of the antitrust laws in the period following the Settlement Agreement.  Whether Siti has relinquished its right to sue MLR is an entirely separate issue from whether it had standing as of the time it filed this action to sue the defendants.  For the reasons already explained, Siti's claimed injury from the defendants' violations of law is derivative from the harm allegedly suffered by MLR and too remote to create standing.

Finally, Siti asserts that it has standing because it is a joint venture partner with MLR.  In its brief opposing this motion, Siti contends that it shares the business property, efforts, audits, profits and losses associated with the MLR patents with MLR.  It also denies in that brief that it is an MLR creditor.  A party may not amend its complaint, however, through statements made in its motion papers.  See Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998).  Siti does not plead in the Complaint that it is a joint venture partner with MLR and the Complaint's detailed description of the terms of the Settlement Agreement are inconsistent with any joint venture arrangement between Siti and MLR.  These assertions of a joint

venture are also inconsistent with Siti's public filings in its Financing Statement and Assignment. In those filings, Siti describes itself as a creditor of MLR who lacks any ownership interest in the MLR patents.

Siti's assertion that it is a joint venture partner with MLR is also at odds with the legal requirements for the creation of a joint venture. Under New York law,[8] there are five elements relevant to the creation of a joint venture:

> (1) two or more persons must enter into a specific agreement to carry on an enterprise for profit;
> (2) their agreement must evidence their intent to be joint venturers;
> (3) each must make a contribution of property, financing, skill, knowledge, or effort;

---

[8] It appears that New York law governs the question of whether Siti and MLR formed a joint venture. In the Complaint, Siti asserts that its office is in New York and explains that it sued MLR in New York courts for damages and equitable relief under New York law. Siti also relies on New York law, among the law of other jurisdictions, in its opposition to this motion. "Since a joint venture is created pursuant to a contract, either express or implied, contract choice of law principles should generally govern an inquiry as to whether a joint venture exists." Bensmiller v. E.I. Dupont De Nemours & Co., 47 F.3d 79, 83 (2d Cir. 1995) (citation omitted). New York courts "apply a 'center of gravity' or 'grouping of the contacts' approach to choice-of-law issues in contract cases. . . . '[T]he traditional choice of law factors' -- the places of contracting and performance -- are 'given heavy weight in [this] analysis.'" Tri-State Employment Servs., Inc. v. Mountbatten Surety Co., 295 F.3d 256, 261 (2d Cir. 2002) (citation omitted). Since Siti and MLR have offices in New York and Virginia, respectively, it can be assumed that New York and Virginia are the places of contracting and performance. No party has suggested that Virginia law should be applied here.

14

>   (4) each must have some degree of joint control over the venture; and
>   (5) <u>there must be a provision for the sharing of both profits and losses</u>.

<u>Dinaco, Inc. v. Time Warner, Inc.</u>, 346 F.3d 64, 67-68 (2d Cir. 2003) (emphasis supplied).  Under this test, a financial interest in ensuring that another succeed in its business is insufficient to create a joint venture.  There must be in addition an agreement to "'<u>submit to the burden of making good the losses</u>'" of another's enterprise.  <u>Id</u>. at 68 (citation omitted).  Applying these principles, the <u>Dinaco</u> court rejected the argument that the receipt of royalty income established a joint venture between the licensor and licensee.  <u>Id</u>.

The Complaint does not plead facts that would support a finding of a joint venture under most of the five <u>Dinaco</u> factors.  Indeed, the facts asserted in the Complaint, even when construed favorably to Siti, are inconsistent with the existence of a joint venture relationship between Siti and MLR.  While the Settlement Agreement gave Siti the right to share in MLR's gross revenue, there is no provision for the sharing in either MLR's profits or losses.  This deficiency alone is enough to defeat Siti's claim of standing premised on the existence of a joint venture agreement with MLR.

Siti principally relies on <u>Geneva Pharmaceuticals Technology Corp. v. Barr Laboratories Inc.</u>, 386 F.3d 485 (2d Cir. 2004), to explain why its relationship with MLR qualifies as a joint

venture. Geneva applied New Jersey joint venture law, however, id. at 512, and Siti has not explained why that jurisdiction's law should be applied here or what connection New Jersey has to any choice of law analysis. In any event, Geneva provides little support for Siti's argument. It explains that New Jersey law on joint ventures is "inconsistent." Id. In the context of that uncertain body of law, however, the Geneva court was able to identify sufficient evidence of a "mutual intent to engage in a joint endeavor." Id. at 514. The Complaint's allegations fall far short of providing such evidence here. As Siti declared in its Assignment and Financing Statement, it has no ownership interest in the MLR patents and is simply a creditor of MLR.

## Conclusion

The defendants' September 30, 2010 motion to dismiss is granted. The Clerk of Court shall enter judgment for the defendants and close the case.

SO ORDERED:

Dated:  New York, New York
        December 29, 2010

```
              _____
                    DENISE COTE
              United States District Judge
```